### STATE OF NORTH CAROLINA EX REL UTILITIES COMMISSION v. FORBES TRANSFER COMPANY, INC.

(Filed 14 June 1963.)

**Carriers § 3—   Carrier purchasing certificate of another carrier may combine the purchased authority with its original authority.**

> Where an irregular carrier acquires the certificate of another irregular carrier with the authority of the Utilities Commission, G.S. 62-121.27, the purchasing carrier has the legal right to combine or "tack" the irregular route authority purchased by it and its original irregular route authority, there being no conditions or restrictions imposed by statute or any rule or regulation of the Commission in effect at the time of the purchase, [Rule 24(b) being adopted subsequent to the purchase], and *held* further, an authority to transport goods from a named municipality to points and places on or east of a designated highway and from points and places on or east of the designated highway to the named municipality does not require that all shipments originate or terminate in the designated municipality, and the purchase of the certificate obviates the question of authority as to interchange of traffic between the irregular carriers.

APPEAL by Forbes Transfer Company, Inc., from *Copeland, Special Judge,* January Assigned Civil Session 1963 of WAKE.

On March 22, 1962, Forbes Transfer Company, Inc. (Forbes), filed with the North Carolina Utilities Commission (Commission) a tariff schedule, to become effective April 23, 1962, showing truckload rates and refrigeration charges on meats or packing house products between Wilson, on the one hand, and Charlotte, Gastonia, and Asheville, on the other hand. This tariff schedule specifically provided the rates applied to shipments *via Goldsboro.* See G.S. 62-121. 29(b). On April 17, 1962, the Commission (1) ordered an investigation into Forbes' authority in respect of shipments to which said rate schedule would apply, (2) suspended use of the tariff schedule and deferred application thereof until August 21, 1962, and (3) designated Forbes as respondent in the proceedings and set a time and place for hearing. See G.S. 62-121.28(f).

Forbes is an irregular route common carrier by motor vehicle. Its home office is at Wilson, N. C.

In 1947, under the grandfather clause of the North Carolina Truck Act, G.S. 62-121.11, Forbes was granted authority to transport general commodities to and from points and places in the area on and east of U. S. Highway 52. Under this authority, Forbes could and can transport general commodities from any originating point to any destination point within the described area, including shipments between Wilson and Goldsboro.

Prior to March 31, 1960, F. L. Express, an irregular route common carrier, acquired under Certificate C-248 authority to transport general commodities "(a) (f)rom Goldsboro to points and places on and east of U. S. Highway 25 extending in a general north and south direction through Asheville," and "(b) (f)rom points and places on and east of said U. S. Highway 25 to Goldsboro, North Carolina." As expressly authorized by the Commission's order of March 31, 1960, F. L. Express sold and transferred to Forbes Certificate C-248 and the authority conferred thereby. G.S. 62-121.26. The Commission's order provided that Forbes "filed with the Commission proper schedules of tariffs covering the authority hereby authorized to be transferred."

At the hearing before the Commission, the only testimony was that of Vance T. Forbes, Vice-President of Forbes, and of George S. Warren, Jr., Secretary-Treasurer of Forbes, which tends to show the facts narrated below.

When Forbes acquired Certificate C-248, Forbes filed "certain petitions and applications with the Interstate Commerce Commission." Pending action thereon, the (Utilities) Commission, at the request of Forbes, suspended Forbes' said authority "until the I.C.C. either approved or denied transfer of interstate rights." G.S. 62-121.27. In a final order dated September 22, 1961, "the I.C.C. . . . denied the interstate authority." (Note: Except as indicated, the record does not disclose the nature of Forbes' petition and proceeding before the Interstate Commerce Commission.)

On October 10, 1960, Forbes, through its tariff publishing agent, North Carolina Motor Carriers, published a tariff covering hauls "from Wilson to Charlotte, Gastonia and Asheville." When a member of the Commission's staff questioned Forbes' authority "to transport shipments of this nature between Wilson and Asheville, Charlotte, or Gastonia," Forbes stated (by letter signed by Mr. Warren) in reply that it had requested its agent "to change this tariff publication to conform with your regulations, since we are not authorized to transport shipments to Asheville, Charlotte, and Gastonia."

During the period (March 31, 1960-September 22, 1961) its authority to do so was suspended, Forbes did not operate under the rights it had acquired from F. L. Express or under the tariff published October 10, 1960. During this period, Forbes leased equipment to Goldston (later A & G Truck Lines) and shipments (approximately ten to fifteen) to points west of U. S. Highway 52 were made under agreement between Forbes and the lessee of its equipment and in the exercise of rights held by such lessee.

On October 12, 1961, Forbes advised the Commission it was beginning to exercise the rights it had acquired from F. L. Express.

Early in 1962 Forbes began operations under its own authority and under the tariff schedule published October 10, 1960. When its authority to do so was questioned by the Commission, the tariff schedule of March 22, 1962, was filed, specifically providing that the rates appearing thereon applied only to shipments *via Goldsboro*.

The Commission, under date of July 3, 1962, ordered that Forbes file an appropriate supplement cancelling said tariff schedule and that Forbes "cease and desist from the transportation of meats or packing house products from and to" the points named in said tariff schedule. Forbes excepted to said order and appealed to the superior court.

In the superior court, Judge Copeland, after reviewing the record, "ORDERED, ADJUDGED AND DECREED that the exceptions of Forbes Transfer Company, Inc., and each and every one of them, be, and the same are hereby overruled, and the Order of the North Carolina Utilities Commission dated July 3, 1962 be, and the same is hereby affirmed." Forbes excepted to the overruling of each of its exceptions to the Commission's order and excepted to said judgment of Judge Copeland and appealed to the Supreme Court.

*Attorney General Bruton and Assistant Attorney General Charles W. Barbee, Jr., for plaintiff appellee.*

*Vaughan S. Winborne for defendant appellant.*

BOBBITT, J.　The question for decision is whether Forbes has the legal right, by combining or "tacking" the irregular route authority it purchased from F. L. Express and its original irregular route authority, to transport commodities between Wilson, on the one hand, and Charlotte, Gastonia, and Asheville, on the other hand, *provided* such shipments are routed and pass through Goldsboro. Charlotte, Gastonia, and Asheville are west of U. S. Highway 52.

The tariff schedule filed by Forbes on March 22, 1962, applies only to shipments between Wilson, on the one hand, and Charlotte, Gastonia, and Asheville, on the other hand. However, in respect of Forbes' legal rights, we perceive no difference between such shipments and shipments between *any* community on or east of U. S. Highway 52, on the one hand, and *any* community west of U. S. Highway 52 and on or east of U. S. Highway 25, on the other hand, *provided* such shipments are routed and pass through Goldsboro.

The Commission's order of March 31, 1960, authorizing the sale and transfer to Forbes by F. L. Express of Certificate C-248 and the authority conferred thereby imposes no condition or restriction in respect

of the exercise by Forbes of the rights conferred by Certificate C-248. Moreover, no such condition or restriction was imposed by any statutory provision or by any Commission rule or regulation *then in effect.* Thereafter, Rule 24(b) of the Commission's Rules and Regulations for the Administration and Enforcement of the Truck Act, General Order No. T-100, effective December 1, 1961, was adopted. Rule 24(b) provides: "No carrier *acquiring operating authority by purchase,* lease or otherwise, *on and after the effective date of this rule,* shall tack or join such authority to an authority already held by said carrier without the written consent of the Commission." (Our italics) Suffice to say, Forbes acquired by purchase the rights conferred by Certificate C-248 prior to the effective date of Rule 24(b).

In support of the Commission's order, it is contended that Forbes' proposed shipments between Wilson, on the one hand, and Asheville, Charlotte, and Gastonia, on the other hand, *via Goldsboro,* are not authorized by Forbes' present certificates; and that Forbes must apply for a new certificate and prove to the satisfaction of the Commission that "a public demand and need exists for the proposed service in addition to existing authorized transportation service." G.S. 62-121.15(f)(1). Certificate C-248 does not provide expressly or by necessary implication that the authority it grants relates solely to instances where Goldsboro is either the original point of shipment or the point of ultimate destination of the commodities involved. Rather, in our view, the more reasonable construction is that *the authority of F. L. Express to transport* under Certificate C-248 began at Goldsboro or terminated at Goldsboro.

It is contended that G.S. 62-121.28 and G.S. 62-121.29 make no provision for the interchange of traffic and the establishment of joint rates between irregular route common carriers. Conceding, without deciding, that Forbes and F. L. Express could not have established an interchange of traffic and joint rates, when Forbes purchased from F. L. Express the rights conferred by Certificate C-248 questions as to interchange of traffic and establishment of joint rates between irregular route common carriers were eliminated.

It appears to be conceded that authority to transport general commodities includes authority to transport meats and packing house products.

No condition or restriction having been imposed by the Commission's order of March 31, 1960, or by statute, or by a Commission rule or regulation in effect when Forbes acquired by purchase the rights conferred by Certificate C-248, it is our opinion, and we so hold, that decision must be based on Forbes' original authority considered

in relation to and in combination with the authority Forbes acquired by purchase from F. L. Express. When so considered, we reach this conclusion: Under its original authority Forbes is authorized to transport commodities from Wilson to Goldsboro and under the authority it purchased from F. L. Express, Forbes is authorized to transport such commodities from Goldsboro to Charlotte, Gastonia, or Asheville. Conversely, under the authority it purchased from F. L. Express, Forbes is authorized to transport commodities from Asheville, Gastonia, or Charlotte to Goldsboro, and under its original authority it is authorized to transport such commodities from Goldsboro to Wilson. Hence, the judgment of the court below is reversed.

Reversed.